Council this is Judge Stewart, Judge Dennis, and Judge Haines. We're in our respective places. We're ready to call your case. United States v. Gratkowski. Mr. Bogan, you're up for your opening. May it please the court. Brad Bogan for Richard Gratkowski. There are two issues presented by this case, both of which arise out of government agents' use of a subpoena rather than a warrant to obtain information about Gratkowski's bitcoin transactions from a third-party bitcoin exchange called Coinbase. And that subpoena arises out of an investigation into a child pornography site on the dark web. The first question presented is whether the agent's use of the subpoena rather than a warrant violated the Fourth Amendment. The second issue is setting aside the Fourth Amendment question, does the good faith exception excuse the agent's use of that subpoena? And unless the court prefers otherwise, I'll start with the good faith question. Now, here the district court found that the Miller third-party doctrine was clearly inapplicable. But nevertheless, the district court found that the agents acted in good faith reliance on binding precedent and using the subpoena rather than a warrant. And the court pointed to Miller, which of course is the case that held that bank records held by a third party do not have, a person does not have a protected Fourth Amendment privacy interest in such records. And that was error, because while it is true that Miller remains president, a lot has changed in the decades since Miller was decided. And the records at issue here are much different from the bank records at issue in Miller. And that has to do with the nature of Bitcoin, which by design is meant to eliminate the need for a third party to financial transactions, like you would with using, say, a check or a wire transfer through a bank. Here, of Bitcoin are recorded on a decentralized public ledger known as the blockchain. The information on the blockchain is limited. All it shows is basically the fact of the transaction. And it will show, it does not contain any identifying information about the parties to the transaction or what the transaction was for, unless the parties choose to add that information to the transaction record that appears on the blockchain. So while Bitcoin is not purely anonymous, it is, as a practical matter, largely anonymous. And so a user of Bitcoin would have an interest in keeping information about the transactions private. And that's a privacy expectation that society ought to recognize as reasonable. So, Mr. Bogan, I mean, when I do transactions with my bank, I don't expect them to be putting that out there for the world to see. And yet, bank transactions have been held to be third party, and so subject to subpoenas. So how can we differentiate the Bitcoin from the bank? Well, there is other information that is shared with a bank that is not shared in a Bitcoin transaction. So, for example, if you were to write a check to pay for a sofa or whatever, then the bank would have the information on the check. So it would show who the payee is, the furniture store, or what have you, in addition to just the amount and the date of the transaction. Bitcoin, by contrast, does not actually show the identity of the payee. It also doesn't even show who the sender of the Bitcoin is. So if you were to actually look at a particular transaction on the blockchain, what you would see is two long alphanumeric sequences that are addresses, one from the sender and the other for the recipient. And that is different from the information that would be contained on a check. It's different from the information that one would have to provide the bank in order to initiate a wire transfer. In circumstances like that, the bank might even need to contact the sender of the wire transfer to verify the validity and the legitimacy of the transaction. So this is a situation that comes up fairly often, which is where technology outpaces the law and can create privacy interests that courts are willing to recognize that courts might not have recognized in decades past when technology wasn't so advanced. So, for example, the cell site location information that was at issue in the Supreme Court's decision in Carpenter. There, because of the nature of cell phone technology, the cell phone provider effectively has records that can track a person's movements down to a great degree of specificity 24 hours a day, seven days a week. And in Carpenter, agents used a subpoena to obtain that information from the cell phone provider to essentially track where Carpenter had been over an extended period of time. And the court recognized that that kind of information is really different in kind than what could be obtained by, say, actual physical surveillance of a suspect by police officers. Mr. Boken, if we're talking the good faith exception, and Carpenter was after this subpoena, so that doesn't, even if we accept your argument that Carpenter has changed the world, how it might apply to Bitcoin, and that therefore the district court was correct, that it was a Fourth Amendment violation. Even if we accept that, how does that help you with good faith? Well, I recognize that it does make the argument more challenging. But the fact remains that Bitcoin has been around for over a decade now. And again, this is a situation where technology has basically outpaced the law. And there's also a question of how specific prior precedent must be in order for agents to rely on it in good faith, particularly when circumstances have changed over the years, as they have here. Now, unless there are any other questions on good faith, I'll turn back to the first question of whether there was a Fourth Amendment violation due to the subpoena rather than a warrant. Well, I want to ask you about, Mr. Boken, can you hear me? Because I have a question about good faith. Yes. Well, it's similar in the sense that it is subject to the requirements of the Bank Secrecy Act, and know your customer regulations. And so it is required to collect information from customers, such as their name, address, social security number, and so on. But still, at least as the record shows here, when Grakowski initiated transactions with the website using the Bitcoin wallet that he had with Coinbase, he still wasn't revealing information about the details of the transaction, such as what it was for. All that would be revealed is his Bitcoin address that he was sending the Bitcoin from, and then the Bitcoin address of the recipient, which was the website, and then the amount of the transaction, the time of the transaction. So again, this is not a situation where the bank can see who the payee is on the check or knows more detailed information about the parties that's necessary to conduct a wire transfer. Instead, it's largely, although not purely, anonymous. And so I believe it really does distinguish it from bank records. And the district court found that here, the third-party doctrine, and these are the words the court used, the third-party doctrine is clearly inapplicable. And that was because of the nature of Bitcoin and the privacy concerns that are similar to those that were at issue in Carpenter. Which circles back to the first question, which is whether there was a Fourth Amendment violation. And part of this is difficult because there is so little information in the record about exactly how it is that agents were able to identify the suspect Bitcoin addresses that they included in the subpoena to Coinbase. The search warrant affidavit indicates that the government engaged the third party, what we call chain analysis, to conduct an analysis of the blockchain to try to identify Bitcoin addresses that might be associated with the website. But beyond that, there's just not information about exactly how that analysis worked. At the hearing on the motion to suppress, an IRS agent testified. And he said that he didn't know how that analysis worked. He also said that he didn't know how the similar analysis that the IRS did itself worked, and in fact, referred to it as magic. But some way or another, the government identified these addresses and put them in a subpoena. But because of the privacy-focused nature of Bitcoin, using a subpoena rather than a warrant to get that information from Coinbase violates the Fourth Amendment. And again, as the district court found, that the carpenter, quote, concerns with digital age privacy are compelling and may well be applicable in this context. Now, the court didn't go on to resolve that question because it relied instead on the good faith exception. But there is a zone of privacy in one's financial transactions, and there's a greater deal of privacy in the use of Bitcoin rather than other traditional types of financial transactions through a bank. And because of that heightened privacy interest, the government ought to have to get a warrant rather than just use a subpoena to obtain that information. And unless there are any further questions, I will cede the rest of my time. Let me just ask you one other question back about good faith. Assuming, you know, for the sake of the argument that, you know, binding precedent was not there to govern this situation of the subpoena, etc., do we need to have some showing of recklessness or something akin to that in order to dissipate any good faith here? In other words, when we look at this record and what's there, can good faith apply on this record, or is there more needed to be shown by somebody or some burden on the government to show that there isn't recklessness or some other kind of center besides they may, you know, thought they were relying on good precedent or not? Do you follow my question? I believe so. Of course, if the government, if the agents were reckless in the way that they went about obtaining this subpoena, then good faith exception would not apply. It's difficult to answer that question because, again, the record is so sparse on exactly what the blockchain analysis involved that was done by the IRS and the third-party firm Chainalysis that they engaged to turn up that information. And it very well be that, given the shifting nature of technology that's simply relying on decades-old precedent involving a very different type of financial transactions, what is a reckless approach to obtaining information once technology has changed to the degree that it has? So you would say in that case, rather than rely on the subpoena, if in doubt about the precedent, go get a search warrant? Yes. Okay. All right. Thanks. Any other questions? All right. You've reserved your rebuttal time. Thank you. Thank you. All right. Mr. Eckenweiler, we'll hear from you. Good morning. May it please the Court? First, Mark Eckenweiler of the United States. The appeal prints the narrow question whether two separate and distinct steps taken by investigators in this case violated the defendant's Fourth Amendment rights. The first of those steps was the analysis of an inherently public document the Bitcoin public ledger. And second, the issuance of a subpoena to a federally regulated financial institution, in this case, the virtual currency exchange known as Coinbase. Because neither of those investigative actions infringed upon the defendant's Fourth Amendment rights. And in any event, because the defendants acted in good faith, this Court should deny the appeal. Now, taking those two steps in the same order that opposing counsel addressed them, beginning with the subpoena to Coinbase. Coinbase is a federally regulated financial institution under the Bank Secrecy Act. Coinbase itself admits as much on its own website. And the subpoena called for customer records that were held and retained by Coinbase under that statute in the implementing regulations. For that reason, the use of the subpoena to Coinbase is indistinguishable from the use of the subpoena to obtain the bank records in Miller. Now, the defense in its briefs has raised two different cases. Let me go directly to the one Mr. Bogan presented in his argument, and that is the Supreme Court's opinion in Carpenter in 2018. Carpenter is inapplicable for multiple reasons. The Court's decision is a narrow one, as the Court itself says. The Court refers at least twice to the unique nature of the records that were at issue in Carpenter, specifically cell site location information. And at the same time, the Court is at pains repeatedly to say it is not displacing Miller, that the records that were at issue in Carpenter were, and I quote, qualitatively different from the bank records at issue in Miller. And when we look at what in Carpenter, it's easy to see the distinction between those kinds of records and the records at issue in Carpenter. The cell site locations at issue in Carpenter were distributed 24-7 by the phone without any overt action by the end user. And therefore, the Supreme Court found that this was not a voluntary disclosure of records. They expressly rejected that claim. A cell phone is so closely assigned to Riley, the earlier cell phone search case. The Court analogized the cell phone to a part of the human anatomy. The Court said that the totality of the records that are collected and retained by wireless carriers, therefore, can create a comprehensive profile, an all-encompassing record. The Court used words like encyclopedic, because in the records, this is a profound amount of information about the user's movement, activities, and associations. And the Court was, therefore, so concerned with those kinds of records, those unique kinds of records, that the Court found that they enjoyed Fourth Amendment protection and that the third-party doctrine did not apply. But that logic is inapplicable in this case, because these records are not all site location records. They aren't bank records. Again, the Carpenter Court explicitly distinguishes different financial institution records. In Carpenter, what the government obtained is 13,000 different types of Mr. Carpenter's movements. In this case, what the subpoenaed Coinbase disclosed was that Coinbase had verified his identity and provided other information, such as his address, his credit card bank, a photo associated with his passport, and that he had transacted on a small number of times with the website, the child-parenthood website that issued the case. In that respect, were the records obtained from Coinbase that would figure the Court's concerns in Carpenter regarding encyclopedic all-encompassing, comprehensive profiles of a person's movement and activities? It is precisely as if Mr. Ratkowski had simply written six checks instead of sending Bitcoin six times. To me, it's very important to distinguish here. The defendant keeps arguing that this is somehow about Bitcoin. The subpoena to Coinbase was almost incidental that it involves Bitcoin. It's a subpoena to a financial institution or records about that institution's engagement with its known customer. The purported anonymity or at least pseudonymity benefits of Bitcoin are not at all an issue. Coinbase knew exactly who it was dealing with. Mr. Ratkowski knew that he was providing all the information. It is clear on this record, putting aside the fact that he was objectively unreasonable for Mr. Ratkowski to expect that he had any sort of privacy interest in Coinbase's records. But Mr. Ratkowski admitted in his own written statement, and you can find this at page 642 of the record, he said, I knew I was going to get caught eventually, especially through the use of Bitcoin. And then he goes on to say in that written statement, I once received an email from the Bitcoin provider, that would have been Coinbase, stating my account had been closed due to suspicious activity on the web. Even after that warning, I continued the activity knowing I would be caught. So putting aside objective expectations, Mr. Ratkowski himself in his own words, admits that he had no subjective expectation of privacy. So that should dispel any concerns with Carpenter as applied to the subpoena to Coinbase. Now, there is an entirely separate investigative step that preceded the subpoena to Coinbase. And that was the investigators examination and analysis of an inherently public document, the so-called Bitcoin ledger. And I emphasize that document must be public. It is essential in the operation of the Bitcoin system that that document be exposed to the entire world. So Carpenter is inept here for many of the same reasons as before. First of all, the ledger does not supply a comprehensive profile of any individual's movements, activities, associations. But more importantly, Carpenter itself did not deal at all with public information. The records at issue in Carpenter were records held not publicly by an individual's wireless carrier. The public ledger is, I cannot emphasize enough, an inherently public document. And therefore, it is not reasonable for anyone to expect that he or an expectation of privacy in those kinds of records. Indeed, this court said in its decision in least in 2016, which is cited in our brief at pages 26 and 27, there is no expectation of privacy in files that are shared publicly over the internet. Going to good faith, which opposing counsel has also raised, reliance on Miller here doesn't require that there be a precedent that's specific to Coinbase. This court's decision in Molina Isidoro, that was a border search case, holds that Davis good faith reliance does not require the existence of precedent on an identical factual scenario. In Molina Isidoro, the issue was about the agent's border search, and it was a more intrusive border search of a specific cell phone. Now, the court's opinion says that this court has never or had never at the time of Molina Isidoro issued an opinion specifically on border searches of electronic devices. And yet the court expressly applied, looking to its own general precedent, but also to the precedent in other circuits, that good faith applied to that search. And the same thing is true here, even though this court has no precedent with respect to the Bitcoin blockchain, the so-called blockchain, the public ledger. This court's precedent, again, in Weist, holds clearly that if a document is publicly available on the internet, then an individual cannot assert a Fourth Amendment privacy interest in that document. And for the agent's conduct in this case, falls squarely within the good faith exception in Davis. If the court has no questions, then I'll conclude my argument simply by saying that, as stated earlier, one, the issuance of the subpoena falls squarely under Miller, two, the examination of the public ledger falls squarely under this court's own precedents and the precedents of other courts with respect to information that is plainly available to the public. And then the alternative, even if this court were to find that either or both of those steps violated the Fourth Amendment, the agents acted in objectively good faith. So if there's nothing further, the court should deny the appeal. I thank you. Questions from the panel? Judge Haynes, you still there? I'm still here. Okay. I can't see you, but as long as you're... All right. Thank you. All right. We're back to you, Mr. Bogan, pending rebuttal. Just a couple of points. First, the government says that, unlike Carpenter, there was... All the information here was public, whereas in Carpenter, it wasn't public information. But that's not exactly right. I mean, there was publicly available information in Carpenter to the extent that anybody who chose to put Carpenter under surveillance and followed him around 24 hours a day could have followed his movements. But just because he effectively shared his movements with anybody who cared to follow him and see him, that didn't mean that the cell site location information that was kept by the cell phone provider was also public information. A second point is that the government emphasized Gratkowski's statement that he knew he was going to be caught. That doesn't necessarily mean that he didn't have a subjective expectation of privacy in his Bitcoin transactions. It could very well be that somebody conducting illegal activity inside their own home might have a sense that eventually they are going to be caught. Let's say, for example... No, you're probably about to respond to it. I was about to say what your response to the government's argument, his explanations, I knew I would get caught, et cetera, et cetera. Does that push against some expectation of privacy if one feels they're going to get caught? No. And so suppose somebody is selling drugs out of their house. Now, there's clearly a protected privacy interest in one's home, and there are a few exceptions to the warrant requirement that just go into the home to look for evidence of drug dealing. But someone might say, I know I'm going to get caught eventually because he has customers coming in and out of his house and might know that eventually one of those customers is going to get caught by the police and give them information about the drug dealing activity. So just the sense that someone might have that their illegal activity is going to be discovered does not necessarily mean that they don't have a subjective expectation of privacy in an area that's protected by the Fourth Amendment. And unless the court has any other questions, I will ask the court to revert to the district court's denial of the motion to suppress and remand for further proceedings. All right. Thank you, Mr. Bogan, Mr. Eckenweller, for your briefing and argument today. The case will be submitted and we'll issue an opinion. Thank you. Appreciate your participation in the argument. Stay safe. Thank you.